## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GLEN ALAN SPICER,                          )
                                           )          **ORDER,**
       Petitioner, pro se,          )     **MEMORANDUM OPINION,**
                                           )     **AND RECOMMENDATION**
       v.                           )
                                           )
UNITED STATES OF AMERICA,                  )          1:08CV747
                                           )          1:06CR299-1
       Respondent.                  )


Petitioner Glen Alan Spicer, a federal prisoner, has filed a motion to vacate,

set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (docket no. 154).[1]

Petitioner was originally indicted on one count of conspiring to manufacture 500 or

more grams of methamphetamine, possess pseudoephedrine knowing that it would

be used to manufacture methamphetamine, and distribute 500 or more grams of

methamphetamine in violation of 21 U.S.C. § 846 and 841(b)(1)(A), one count of

maintaining a place for the purpose of manufacturing and distributing

methamphetamine in violation of 21 U.S.C. § 856(a)(1) and (b), one count of

possessing a number of substances that are used to manufacture

methamphetamine while knowing that they would be so used in violation of 21

U.S.C. § 843(a)(6) and (d)(2), one count of possessing a firearm in furtherance of

---

[1] This and all further cites to the record are to the criminal case.

a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), and one count of possession of a firearm after a felony conviction in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (docket no. 1). The government later filed two Informations of Prior Conviction (docket nos. 20, 98) against Petitioner, which meant that, if convicted, he faced a mandatory penalty of life imprisonment.

Petitioner proceeded to trial, where several witnesses, including all five of his alleged co-conspirators, testified against him. With more testimony expected, Petitioner decided to enter into a plea agreement with the government (docket no. 102). Pursuant to that agreement, he agreed to plead guilty to Object One of Count One (conspiracy to manufacture more than 500 grams of methamphetamine) and Count Five (possession of a firearm after a felony conviction) of the indictment. In turn, the government agreed to dismiss the other charges and to withdraw one Information of Prior Conviction. This reduced Petitioner's minimum statutory penalty from life imprisonment to 20 years of imprisonment. Petitioner was eventually sentenced to 20 years of imprisonment on Count One and a concurrent 120 months of imprisonment on Count Five (docket no. 142).

Petitioner filed no direct appeal, but instead he submitted a motion under Section 2255. Respondent filed a response seeking to have the motion denied (docket no. 190), and Petitioner filed a reply (docket no. 195). The court eventually ordered the production of all of Petitioner's trial transcripts and that an evidentiary

hearing be held. That hearing was held on May 25, 2010. Petitioner's Section 2255 motion is again before the court for a decision.

## PETITIONER'S CLAIMS

Petitioner originally raised three possible claims for relief in his Section 2255 motion. The first of these was that the government breached the plea agreement by failing to disclose to the court and to the United States Probation Office that some of the testimony that had been presented at trial was potentially perjured. The second claim was that Petitioner received ineffective assistance of counsel because his attorney did not disclose the potentially perjured testimony, did not move to withdraw Petitioner's plea agreement, did not object to the breach of the plea agreement alleged in Petitioner's first claim, and did not object to a problem with Petitioner's guilty plea. Finally, Petitioner claimed that counsel provided ineffective assistance by failing to consult with him regarding an appeal and failing to file an appeal. Petitioner sought to withdraw his guilty plea.

At the evidentiary hearing, which was held after Petitioner received counsel, Petitioner altered his claims significantly. Apparently aware that withdrawing his guilty plea would result in a trial which could end with a potentially longer sentence and perhaps even life in prison, Petitioner stated through counsel that he was no longer seeking to withdraw his guilty plea (docket no. 213 at 98). He also made no mention of any continuing desire to file a direct appeal. Instead, counsel stated that

Petitioner's primary current claim was that the amount of drugs calculated for purposes of his sentencing was supported by the perjured testimony of Joe Tackett. He asked that a new Presentence Report (PSR) be prepared without using the allegedly perjured testimony and that Petitioner be resentenced based on the new PSR (*id.*). It is not entirely clear whether Petitioner intends to pursue this claim as one for ineffective assistance of counsel or as an independent claim. The court will address it both ways out of an abundance of caution. Counsel also raised the possibility of a discovery/disclosure violation by the government because the prosecutor did not notify prior defense counsel of a letter raising the possibility that the PSR was calculated using perjured testimony (*id.* at 94, 98-99). The court will address only Petitioner's current claims and deem the previous claims to be abandoned.

## RECOMMENDED FINDINGS OF FACT

The evidence produced at the evidentiary hearing, as well as the evidence already in the record, supports the following findings of fact:

1. Richard Smith testified at Petitioner's trial that he and Petitioner manufactured or "cooked' methamphetamine together on a number of occasions between September 2003 and the end of January 2004 (docket no. 176 at 5, 6).

2. The amount of each cook was normally between one-half ounce (14 grams) and 40 grams, and the cooks occurred about every two weeks (*id.* at 6, 13, 31).

3. The amount and frequency of the cooks to which Smith testified is supported by the testimony of William Haynes at Petitioner's trial (docket no. 177 at 8, 10).

4. The conspiracy alleged in the indictment did not start until January of 2004. For that reason, only two of the cooks to which Smith testified would likely have occurred as a part of the alleged conspiracy. This means that the amount of methamphetamine reasonably attributable to the conspiracy based on Smith's testimony would be 28 to 80 grams.

5. Michelle Watson testified at Petitioner's trial that in April of 2005, she was visiting Petitioner when he offered her methamphetamine. She accepted it. After that time, she saw Petitioner more often and used drugs with him (docket no. 199 at 51). They began dating and Watson stayed overnight at Petitioner's residence three to four times a week "during the summer months" of 2005 through his arrest on October 14, 2005 (*id.* at 21, 56).

6. During the time that Watson was involved with Petitioner, he was manufacturing methamphetamine at least once a week (*id.* at 56).

7. Watson heard Petitioner state that he would not make methamphetamine if he could not make at least an ounce (28 grams) (*id.* at 60).

8. The amount per cook and the regularity of the cooks is supported by Watson's testimony that she, Spicer, and several other persons used the methamphetamine once it was manufactured (*id.* at 51, 77), that other persons regularly bought methamphetamine from Petitioner at his house or had it delivered to them by Petitioner (*id.* at 56-61, 76), and that she and several other persons regularly bought supplies and chemicals to allow Petitioner to make the methamphetamine (*id.* at 62, 69-70, 75, 87). There is no evidence that Petitioner ever purchased any of this methamphetamine, as opposed to manufacturing it.

9. Calculated at an amount of one ounce per week for the months of June, July, August, September, and half of October, the amount of methamphetamine supported by Watson's testimony as having been manufactured by Petitioner, at a minimum, is 504 grams (18 weeks x 28 grams per week).

10. Physical evidence in the form of methamphetamine manufacturing equipment, waste products, and precursor chemicals found at Petitioner's residence at the time of his arrest also supports the fact that Petitioner manufactured methamphetamine in an extensive fashion for a lengthy period of time (*id.* at 20-37).

11. Given that Petitioner was offering Watson methamphetamine as early as April 2005, it is clear that he was manufacturing it at that point, although the exact

amounts are unclear. There is also a fair inference, given that he was manufacturing it regularly with Richard Smith in January 2004 and also manufacturing it regularly from April to October of 2005, that he actually manufactured it regularly throughout the time period in question. The lowest amount of 532 grams attributable to the conspiracy through a combination of Smith and Watson's trial testimony is the minimum amount that could have been attributable to Petitioner. The true amount he manufactured is likely far higher.

13. If 500 grams of methamphetamine was attributed to Petitioner from whatever source, he faced a statutory penalty of 20 years to life in prison (docket no 213 at 81).

14. Petitioner agreed in his plea agreement that between 500 grams and 1.5 kilograms of methamphetamine was attributable to him (docket no. 102, ¶ 5(b)).

15. At the time of Petitioner's sentencing, Petitioner's attorneys were aware that most of the methamphetamine attributed to Petitioner in the PSR was based on statements by Joe Tackett (docket no. 213 at 70).

16. Although the prosecutor in the case did not specifically notify Petitioner's attorneys of a letter written by alleged co-conspirator Joshua Hall's mother suggesting that Tackett had committed perjury, his attorneys were also aware from other sources that information existed suggesting that Tackett's testimony and statements were false (*id.* at 30-31, 69, 85).

17.   Petitioner's attorneys, in fact, disregarded Tackett's testimony and statements in their decision-making process (*id.* at 87, 89).

18.   After Petitioner entered his guilty plea, Petitioner's attorneys chose not to contest the amount of methamphetamine attributed to Petitioner by the PSR because, even if they succeeded in having the amounts based on Tackett's statements removed, they believed that at least 500 grams of methamphetamine would be attributed to Petitioner based on the other testimony from his trial (*id.* at 82, 87).

19.   After the entry of Petitioner's guilty plea, Petitioner's attorneys did not contest the drug amount, but instead focused on a strategy of having him cooperate with the government to receive a motion for a substantial assistance departure (docket no. 213 at 83).

20.   The attempt at a substantial assistance departure was ultimately unsuccessful.

## COMMENT AND ANALYSIS

Petitioner's first claim for relief is that the drug amount attributed to him at sentencing was incorrect because it relied on the PSR which relied, in turn, on the false statements and testimony of Joe Tackett.  As set out previously, it is not clear whether or not Petitioner is raising this as an independent claim or as one based on ineffective assistance of counsel.  Ineffective assistance of counsel is the more likely

theory given that an independent claim could raise questions of procedural bar due to the lack of any direct appeal. Therefore, the court will address the claim primarily as one based on ineffective assistance of counsel.

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). To establish prejudice, Petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Here, Petitioner can establish neither an error by counsel nor any prejudice. Counsel were well aware of problems with Tackett's testimony and statements, but made a strategic decision not to raise any of these problems. This decision was based partly on the fact that the parties had stipulated in the plea agreement that more than 500 grams of methamphetamine was involved in Petitioner's offense. More important, counsel were aware that the testimony of Haynes and Watson was sufficient to support a finding that more than 500 grams was manufactured even in the absence of the stipulation and Tackett's statements. Rather than pursue a challenge to the amount of drugs which was unlikely to succeed, defense counsel

chose to pursue the alternative strategy of allowing the sentencing to proceed while having Petitioner cooperate with authorities in an attempt to gain a sentence reduction through substantial assistance.  This was an entirely reasonable choice of strategy under the circumstances.  Further, because the trial testimony of Haynes and Watson would have supported a finding of more than 500 grams of drugs, objecting to the PSR would have accomplished nothing.  Petitioner was not prejudiced by the use of Tackett's statements in the PSR.  This means that his ineffective assistance of counsel claim as to the amount of drugs at sentencing fails.

The conclusion regarding prejudice also defeats any independent claim of sentencing error that Petitioner is raising.  To the extent that Petitioner was sentenced based on the testimony of Tackett and that the testimony may be perjured, any use of perjured testimony was harmless in light of the parties' stipulation and the testimony of the other witnesses at Petitioner's trial.  *See United States v. Dyess,* 478 F.3d 224, 233 (4th Cir. 2007) (no resentencing where some witnesses' testimony as to drug amount was tainted, but other witnesses' testimony supported the drug amount)*.*

The other contention advanced by Petitioner at his evidentiary hearing is that the prosecutor in the case may have improperly withheld, or at least failed to affirmatively notify defense counsel, of the letter from Joshua Hall's mother which potentially called Tackett's testimony into question.  In order to establish

prosecutorial misconduct, a petitioner must show that the prosecutor's actions were improper and that he suffered such injury to his substantial rights that he was deprived of a fair trial. *United States v. Francisco*, 35 F.3d 116, 120 (4th Cir. 1994). Relevant to alleged discovery violations, under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and its progeny, the failure by the prosecution to disclose "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Kyles v. Whitley*, 514 U.S. 419, 431 (1995). Evidence is "favorable" both when it would tend to exculpate the accused and when it can be used to impeach government witnesses. *United States v. Bagley,* 473 U.S. 667, 682 (1985). Nevertheless, where the prosecution fails to disclose evidence favorable to the accused, such evidence is material "only where there exists a 'reasonable probability' that had the evidence been disclosed the result of the [proceeding] would have been different." *Kyles*, 514 U.S. at 434. A "reasonable probability" of a different result is shown when the government's failure to disclose evidence "undermines confidence in the outcome of the [proceeding]." *Kyles*, 514 U.S. at 434 (citing *Bagley*, 473 U.S. at 668).

For all of the reasons set out above, any failure to properly disclose Hall's mother's letter did not constitute prosecutorial conduct or a discovery violation which would entitle Petitioner to relief. The evidence was really only cumulative given that

Petitioner's attorneys knew of problems with Tackett's testimony from other sources. In fact, they did not even consider his testimony important in their strategic planning. Also, the letter does not undermine confidence in the outcome of the case. Even absent Tackett's testimony, Petitioner's sentence would have been the same based on the testimony of the other witnesses. Petitioner's prosecutorial misconduct/discovery violation claim also fails.

## RECOMMENDED CONCLUSIONS OF LAW

1. Petitioner has the burden at this Section 2255 hearing "of sustaining his contentions . . . by a preponderance of the evidence." 3 CHARLES ALAN WRIGHT, NANCY J. KING & SUSAN R. KLEIN, FEDERAL PRACTICE AND PROCEDURE § 600, p. 784 (3d ed.2004).

2. The evidence adduced at trial through witnesses other than Joe Tackett supports a finding that Petitioner manufactured more than 500 grams of methamphetamine during the course of the alleged conspiracy. Therefore, his attorneys' decision to pursue substantial assistance and not challenge the drug amount at sentencing was not an unreasonable decision and did not prejudice Petitioner.

3. Petitioner was not harmed by any use of Tackett's testimony in the PSR because other testimony would have supported a finding that he manufactured 500

grams of methamphetamine, thereby making him subject to a 20-year mandatory

minimum sentence even in the absence of Tackett's testimony.

4. The failure to disclose a letter written by co-defendant Hall's mother did not

amount to prosecutorial misconduct or a discovery violation. Petitioner was not

harmed or prejudiced in any way by the lack of disclosure.

Accordingly, for the foregoing reasons,

**IT IS THEREFORE RECOMMENDED** that Petitioner's motion to vacate, set

aside or correct sentence (docket no. 154) be **DENIED** and that Judgment be

entered dismissing this action.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, N.C.
August 31, 2010